**In re Tim KVAMME and Teri Kvamme, Debtors.**

**Bankruptcy No. 86–06005.**

United States Bankruptcy Court, D. North Dakota.

Aug. 18, 1988.

William F. Needler, Chicago, Ill., for debtor.

Glenn Fenske, Fargo, N.D., Local Counsel, for debtor.

Cameron Hayden, Bismarck, N.D., for USA/FmHA/ASCS.

Mark Larson, Minot, N.D., for Velva Credit Union.

R. James Maxson, Minot, N.D., for People's State Bank of Velva.

ORDER

WILLIAM A. HILL, Bankruptcy Judge.

At the confirmation hearing on the Debtors' third amended Chapter 11 plan held on August 9, 1988, the Debtors, through recently retained counsel conceded that the plan as written could not be confirmed but requested additional time to prepare a fourth amended plan modifying the treatment accorded FmHA.

FmHA is presently a Class 4 creditor holding a second mortgage on 1,200 acres presently valued at $98,948.00 in the aggregate. A first mortgage on the same land reduces FmHA's secured claim to $60,510.00. FmHA also has security in farm equipment worth $55,750.00 and in cattle worth $13,000.00. Its total loan balance is $368,205.00. On September 2, 1987, FmHA filed an 1111(b) election—an event the third amended plan fails to address and one which the Debtors concede makes confirmation under Chapter 11 difficult if not impossible. The Debtors object to FmHA's 1111(b) election charging that the Agricultural Credit Act of 1987 (Act) operates to prohibit the election and instead mandates that FmHA restructure its claim downward to the value of the collateral. The parties seek a determination of this issue in advance of any further plan proposals.

Reliance is placed upon portions of the Act which amend 12 U.S.C. § 2202 by adding new sections relative to the restructuring of distressed loans. As relevant, these amending sections provide:

Section 4.14 A

(b)1—"On a determination by a qualified lender that a loan made by the lender is or has become a distressed loan, the lender shall provide written notice to the borrower [together with a copy of the lender's restructuring policy and materials necessary for the borrower to apply for restructuring]. * * *

(b)3—"No qualified lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section."

(c)—"On determination by a qualified lender that a loan made by the lender is or has become a distressed loan, the lender shall provide a reasonable opportunity for the borrower thereof to personally

meet with a representative of the lender [to discuss the loan status, borrower's financial condition and the possibility of restructuring]". * * *

(d)(1)—"When a qualified lender receives an application for restructuring from a borrower, the qualified lender shall determine whether or not to restructure the loan, taking into consideration: [costs of restructuring, commitment by borrower of all discretionary income to primary obligations, borrowers financial and management ability, sound lending practices]". * * *

(e)(1)—"If a qualified lender determines that the potential costs to a qualified lender of restructuring the loan in accordance with a proposed restructuring plan is less than or equal to the potential costs of foreclosure, the qualified lender shall restructure the loan in accordance with the plan."

Agricultural Credit Act of 1987, Pub.L. No. 100–233, § 102, 101 Stat. 1575.

Subsection (e)2 sets forth the means by which a lender is to compute the costs of restructuring.

The Debtors take the position that restructuring under the Act is an exclusive remedy which prevents an 1111(b) election in the context of bankruptcy. The effect of the Debtors' argument is an implied repeal of section 1111(b) of the Bankruptcy Code and any other Bankruptcy Code provision that impinges upon the Act.

Neither the legislative history accompanying the Act nor case law dealing with statutory interpretation lead to this result. The Act merely provides for a restructuring *opportunity* and within bankruptcy that opportunity is no more nor less than what would be available to a borrower outside of bankruptcy. Contrary to the Debtors' view, the Act does not in this court's opinion, overrule, repeal or render inoperative any portion of the Bankruptcy Code including section 1111(b). Indeed, Debtors' present counsel made a similar argument in the case of *Matter of Dilsaver*, 17 B.C.D. 785 (Bankr.Neb.1988), arguing the Act prevented sequestration of rents and profits under section 552 of the Bankruptcy Code.

With a broad brush, the Debtors now say that *Dilsaver* stands for the proposition that the Act applies to creditors in Chapter 11 cases and thereby prohibits creditors from taking advantage of certain Bankruptcy Code afforded remedies. While this court agrees that the Act applies to creditors in bankruptcy cases, it disagrees with the attenuated argument that *Dilsaver* can be read to mean that the Act truncates the United States Bankruptcy Code. In *Dilsaver* the court merely held that compliance with the Act is a condition precedent to commencement of foreclosure proceedings. An 1111(b) election is not a foreclosure proceeding but is a remedy available to creditors in bankruptcy.

Whether an 1111(b) election has any vitality in the face of the Act depends upon whether the FmHA, as a qualified lender, has determined under section 4.14A(d)1, to restructure or, whether it is required by section 4.14A(e)1, to restructure. Restructuring under the Act is not mandatory in all instances without taking into account the borrower's personal situation and the lender's restructuring costs. While the event of bankruptcy does not ameliorate the qualified lender's duties to make available and consider restructuring in appropriate instances; on the other hand, the mere duty to consider restructuring does not eliminate Bankruptcy Code remedies unless a particular Code remedy becomes moot by virtue of an independent restructuring determination. The Act itself requires only that a qualified lender provide informed notice and an opportunity for discussion to a borrower and that the lender not commence or continue with a foreclosure until it has completed its determination on the appropriateness of restructuring. The Act does not mandate restructuring unless the qualified lender has determined that the cost of restructuring will be less than or equal to the costs of foreclosure.

The Act impacts upon the Bankruptcy Code remedy of section 1111(b) only if the qualified lender has decided to restructure consistent with section 4.14A of the Act and as a consequence, writes down the borrower's loan to the value of the collat-

eral. Absent a decision to restructure, an 1111(b) election is a viable Bankruptcy Code option available to a qualified lender.

Accordingly, the Debtors' objection to the FmHA's section 1111(b) election is overruled. Any Chapter 11 plan must take into account the fact of the election.

SO ORDERED.